[No. 1165.   Decided July 7, 1894.]

THE STATE OF WASHINGTON, *Respondent*, v. H. D. SMITH, *Appellant.*

MURDER — SUFFICIENCY OF INFORMATION — CIRCUMSTANTIAL EVIDENCE — CORPUS DELICTI.

An information charging murder in the first degree is sufficient when it charges that the accused, on a certain day, in a certain county and state, "purposely and of his deliberate and premeditated malice, unlawfully and feloniously killed [the deceased], by then and there purposely and of his deliberate and premeditated malice, shooting and cutting and mortally wounding the said [deceased] with a gun and with a knife, which the said [accused person] then and there held in his hands."

When there is nothing in the record showing the absence of the conditions which must exist in order to warrant the prosecution of a public offense by information, the accused cannot complain of the overruling of his motion in arrest of judgment, made on the ground of the insufficiency of the information in that regard.

In a prosecution for murder the *corpus delicti* is sufficiently proven when it is shown that the charred corpse of a man, with throat cut and bullet holes through head and abdomen, was found among the burned ruins of a barn, that from certain physical peculiarities of teeth and hair, and also from the shape of the head and face, neighbors and friends recognized the corpse as being that of the owner of the premises, with whose murder the accused was charged.

A conviction of the crime of murder, based upon circumstantial evidence, will not be set aside when all the facts and circumstances appearing in evidence warrant the conclusion that the accused was guilty of the crime charged.

*Appeal from Superior Court, Spokane County.*

*Fenton & Henley*, for appellant.
*S. G. Allen*, Prosecuting Attorney, for The State.

The opinion of the court was delivered by

ANDERS, J.—The appellant was tried upon an information charging him with the crime of murder in the first

degree in the killing of John Wyant, in Spokane county, on June 9, 1892, by shooting him with a gun and cutting him with a knife.    The jury returned a verdict of guilty as charged, upon which verdict, after overruling motions in arrest of judgment and for a new trial, the court adjudged him guilty and sentenced him to be hanged.    To reverse this judgment and sentence the defendant prosecutes this appeal.

The first error relied upon as a ground for reversal of the judgment is the overruling of the defendant's demurrer to the information.    This objection is not tenable.    The information is substantially in accordance with the precedent of an indictment for murder formulated and recommended by our territorial supreme court in the case of *Leonard v. Territory*, 2 Wash. T. 381 (7 Pac. 872), and is sufficient both in form and substance.    No material allegation is omitted and no superfluous averments are contained therein, and the facts constituting the crime charged are set forth in plain and concise language, in accordance with the requirements of the code.

Nor did the court, in our opinion, commit error in overruling the motion in arrest of judgment.    Nothing appears in the record showing the absence of the conditions which must exist in order to warrant the prosecution of a public offense by information rather than by indictment.    On the contrary, we think it sufficiently appears that the prosecuting attorney was fully justified in this case in filing the information against the defendant upon which he was tried.

It is contended by the learned counsel for the defendant that the evidence in this case is entirely insufficient to sustain the verdict, and that the court therefore erred in denying the defendant's motion for a peremptory instruction in his favor, and also in overruling his motion for a new trial based upon the insufficiency of the evidence.    And it is especially urged in the brief of appellant that the death of

John Wyant is not shown by the testimony adduced at the trial. But a careful consideration of the evidence leads us to a different conclusion. The evidence discloses that Wyant was an unmarried man, and for some years prior to June 9, 1892, had resided alone upon his farm about five miles southwest of the village of Spangle, in Spokane county, and some eighteen or twenty miles from the city of Spokane. He was supposed to have considerable means, and owing to his peculiar custom of always converting his money into coin, it was generally rumored and believed among his acquaintances that he was hoarding his money by burying it.

He was seen at work in one of his fields on the afternoon of the day above mentioned, but was never seen or heard of alive afterwards. On the evening of that day, at half past 10 o'clock, his barn, which was situated some distance from his house, was, by Mrs. Morris, discovered to be on fire. She aroused her husband and he and some of his neighbors went to Wyant's premises. Soon after they arrived at the burning building they discovered what they supposed to be the form of a human being in the midst of the flames lying in that portion of the barn where hay was usually kept. Other neighbors were called, and, after satisfying themselves that what they had before believed to be a human body was in fact such, they proceeded to examine the premises. Upon entering the house they found the dining table with dishes upon it which had been used but were unwashed, a chair near it, and a diary, such as Wyant always kept, lying open upon the table containing a brief account of what he did on the 9th day of June, and egg shells upon the hearth of the stove. Nothing in the house appeared to have been molested, and judging from appearances Wyant had eaten his supper and at once left the room. Further investigation developed the fact that his riding horse was missing from the pasture where he was kept and where the other horses were found.

In the morning the fresh tracks of the missing horse were traced past the house of Mr. Rohweder to the end of the lane.   From there, instead of following the usually traveled road to Spokane, which passes through Spangle, the tracks indicated that the horse took a short cut which was rough and but little traveled, and which was known to the appellant.   On the evening of June 10 this horse was found on the usually traveled road between Spokane and Spangle, about seven miles south of Spokane, and was going towards home.   He was also seen and recognized at Spangle and appeared to have been ridden hard, having dried sweat and saddle marks upon him.   The tracks of this horse were easily identified and followed on account of the fact that there was a peculiarly shaped notch in one of his hoofs.   The coroner, having been sent for, went to the Wyant farm the morning after the fire, accompanied by Dr. Hoxie, and held an inquest on the body which was still lying untouched in the ruins of the barn.   It was found that the legs of the deceased to the knees and the arms to the elbows had been entirely consumed by the fire, and the remaining portion of the body was greatly charred and blackened and covered with a coating of ashes, which seems, in a measure, to have preserved it from further consumption.   The general outlines of the face had not been destroyed, and owing to the fact that a cloth around the neck had been saturated with blood it had not burned, and it was discovered that the throat had been cut, as the witnesses expressed it, from ear to ear.   In the stomach undigested eggs were found, and it was shown that Wyant was in the constant habit of eating eggs.   A bullet had passed through the head from left to right just above the ears, and another had apparently pierced the abdomen.   It was thus made apparent that a heinous crime had been committed.   Somebody had evidently been killed by violence inflicted by another.   Who was it?   Several

of the neighbors and intimate friends of John Wyant swore positively that it was he, and the jury so found, and we think rightly. Some of the witnesses recognized the body as that of Wyant by the peculiar shape of the head and face. Others knew him by the absence of a certain tooth and by a certain front tooth which stood alone. A quid of tobacco was found between the lip and the teeth of the corpse, and one of the witnesses testified that Wyant habitually held his tobacco in that peculiar manner. And they all agreed that the curly hair which was found unburnt on the back of the head resembled that of John Wyant. With all of this evidence before them the jury could hardly have arrived at the conclusion that the death of John Wyant was not proven beyond any reasonable doubt.

And that the appellant killed him we think is equally certain. For some weeks prior to the homicide appellant had been rooming and boarding at the Albion Hotel in the city of Spokane, and was known by the name of H. C. Jones, which he says he assumed in order to avoid being recognized by certain persons who had been in the penitentiary with him in California. On June 6, 1892, he went out to the farm of Mr. Rohweder near the Wyant place, saw Wyant, but Mr. Rohweder not being at home, returned to Spangle where he spent the night at a hotel. The next morning, June 7, this Mr. Rohweder, having gone to Spangle on business, met appellant with whom he had been acquainted for about twelve years and for whom he had worked at one time in California, and took him back to his home where he spent the day, Wyant being there also a portion of the time. Appellant tried to purchase Wyant's farm for his brother who had been in that vicinity some time previously but was then in California, but Wyant was not disposed to sell. During the conversation at Rohweder's Wyant remarked, in the presence of

the appellant, that he, Wyant, had money but not nearly so much as people thought he had. Wyant went home before night and the appellant remained all night with Rohweder. The next morning, June 8th, Rohweder took appellant to Spangle in a wagon, where he took the train for Spokane. But before going on board the cars he was seen to purchase a ticket to Spokane and return to Spangle. On the next afternoon, June 9th, at about half past one o'clock, appellant borrowed overalls, a "jumper," and an old coat, from the day clerk at the Albion Hotel, saying he wanted them because he was going to work in a well that night. Soon after he left the hotel and was not again seen there by any of the employés until four or five o'clock on the following morning. But he was seen on the train which left Spokane for Spangle at 2:30 o'clock on the afternoon of June 9th, and got off at the latter place on the arrival of the train at about half past three o'clock, and was then wearing clothing similar to that he had borrowed at his hotel a short time previously. Appellant was not again noticed until a little after sunset, when he was seen by Rohweder in Wyant's field going down a place which was a little lower than the ordinary level of the ground in the direction of Wyant's house. He was then two hundred or two hundred and fifty yards distant from Rohweder, but the latter testified positively that he knew him. Both Mr. and Mrs. Morris saw a man whom they did not know at about the same time and place. About nine o'clock that evening Mrs. Villa, who lived but a short distance from Wyant's house, heard two shots fired at or in the locality of his barn. Near ten o'clock Mrs. Morris heard a horse run down the road past her house and coming from the direction of Wyant's ranch, and Rohweder who lived further down also heard a horse running down the road. He says he looked out of the window and saw the appellant on John Wyant's horse going past his house

at full speed. The moon was shining brightly and he watched him until he disappeared in the distance. When opposite the window appellant was only forty or fifty feet from Rohweder, and he testified that he recognized him and also the horse. This was the horse which, as we have stated, was missing from the pasture a few hours later, and whose tracks were followed towards Spokane, and which was found loose in the highway the next evening.

On the morning of June 9 appellant went to the office of an attorney in Spokane and had a contract of sale of the Wyant farm and everything thereon, including the livestock, prepared ready for signing, which he paid for and carried away. When on the witness stand in his own behalf he explained this transaction by saying in effect that he expected to meet Wyant at Spokane that afternoon on the arrival of the train from Spangle, and desired to have the contract ready when he arrived, but he did not come. In explanation of his absence from his boarding house from the time he borrowed the clothes until the next morning, appellant testified that he went down the river fishing in the afternoon, and in the evening as he was walking about somewhere in Browne's addition he was attacked by two men who attempted to rob him. One of them, he said, presented a pistol which he grabbed with his left hand, and it was discharged, the bullet grazing and slightly injuring his hand. He further stated that just at that moment the other man struck him in the stomach and made him sick, and after they both ran away he lay down on the ground for an indefinite length of time and then went to his hotel. He admitted that he gave no alarm and never mentioned the occurrence to the police. On the following day it was observed that his hand was injured and on being asked what the matter was he replied that he had cut it. He was arrested a day or two afterwards, and on examination it was found that his left hand had been

wounded by a gun shot which had been fired from and not towards him as he testified. Powder was still sticking in the skin on the upper side of his thumb and index finger. His legs were chafed and showed that he had recently been riding. In his valise which was in his room at the time of his arrest were found the borrowed overalls and "jumper," a soft hat which he did not wear about town, and a revolver perfectly clean and with every chamber loaded, and a wiper which bore evidence of very recent use. The coat which he got with the overalls was upon the floor at the foot of his bed. No explanation whatever was given why he did not work in a well on that fatal night.

With all the facts and circumstances appearing in the record before us we are unable to say that the jury were not fully warranted by the evidence in arriving at the conclusion which they did, that the appellant was the person who perpetrated the atrocious crime charged in the information. While the evidence is largely circumstantial, it is to our minds so cogent and convincing that we believe no fair minded and impartial jury could have found the appellant not guilty.

The appellant also complains of the instructions given by the court to the jury. They were very voluminous and many of them were given at the request of defendant's counsel. We have carefully examined them and are of the opinion that, as a whole, they are singularly free from substantial errors, and are as favorable to the appellant as he had any right to demand or expect. We see in them no positive misdirection, nor anything by which the jury could have been misled to the prejudice of the defendant. The defendant had the benefit of able and industrious counsel in the trial and presentation of his case to the jury, and was deprived of no right to which he was entitled under the law.

The judgment and sentence are therefore affirmed, and

the court below will, in accordance with the statute (§ 1354, Code Proc.), proceed to appoint a day for the carrying of the same into effect.

DUNBAR, C. J., and SCOTT, HOYT and STILES, JJ., concur.